[Cite as *Lingenfelter v. Lingenfelter*, 2017-Ohio-235.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| JASON LINGENFELTER | C.A. No.      15AP0062 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| NICHOLE LINGENFELTER | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE No.      12-DR-0288 |

DECISION AND JOURNAL ENTRY

Dated: January 23, 2017

WHITMORE, Judge.

{¶1}    Defendant-Appellant, Nichole Lingenfelter ("Wife"), appeals from the judgment of the Wayne County Court of Common Pleas, Domestic Relations Division. This Court reverses.

I

{¶2}    Wife and Plaintiff-Appellee, Jason Lingenfelter ("Husband"), married in April 2000 and had two children during their marriage. In June 2012, Husband filed a complaint for divorce. The parties were able to stipulate to a number of items, but could not agree on others such as the amount of equity in their home, if any, the allocation of certain debts, and whether either party should receive spousal and/or child support. A magistrate presided over the parties' divorce hearing on two separate days: July 30, 2013, and October 10, 2013.

{¶3}    At the conclusion of the first day's hearing, the magistrate indicated that he wished to speak strictly to the attorneys. A discussion then took place, during which the

magistrate asked the attorneys about their settlement negotiations. Near the end of the discussion, the magistrate informed the attorneys that he had known Husband's parents for 35 years and that his former secretary was a member of their family. Shortly thereafter, one of the attorneys alerted the magistrate that their conversation was still being recorded. The transcribed conversation then ended.

{¶4} Following the second day of the divorce hearing, the magistrate issued his decision, and the trial court entered judgment upon it. Wife filed objections to the magistrate's decision and, after securing a transcript of the proceedings, also filed a motion to disqualify the magistrate. She argued that the trial court should disqualify the magistrate and set the matter for a new hearing because the magistrate had failed to make a timely disclosure on the record of his relationship with Husband's family. Husband filed a brief in opposition to Wife's motion to disqualify as well as her objections. Without holding a hearing, the trial court overruled Wife's objections and denied her motion to disqualify.

{¶5} Wife appealed from the trial court's judgment against her and, on appeal, challenged its ruling on her motion to disqualify. *See Lingenfelter v. Lingenfelter*, 9th Dist. Wayne No. 14AP0005, 2015-Ohio-4002, ¶ 8-18. We determined that the trial court abused its discretion by denying Wife's motion to disqualify without first holding a hearing. *Id.* at ¶ 17. Consequently, we remanded the matter for the court to hold a hearing on Wife's motion. *Id.*

{¶6} On remand, the court conducted a hearing on Wife's motion to disqualify. Wife, Husband, and the magistrate who presided over their divorce hearing all testified before the court. The court then took the matter under advisement and, subsequently, denied Wife's motion to disqualify.

**{¶7}** Wife now appeals from the court's denial of her motion to disqualify as well as its underlying judgment of divorce. She raises four assignments of error for our review. For ease of analysis, we consolidate several of her assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN THE TRIAL COURT OVERRULED THE APPELLANT'S MOTION TO DISQUALIFY THE MAGISTRATE.

**{¶8}** In her first assignment of error, Wife argues that the trial court abused its discretion by denying her motion to disqualify the magistrate who presided over the parties' divorce hearing. She argues that disqualification was warranted because, under these particular facts and circumstances, there was an appearance of impropriety on the part of the magistrate. We agree.

**{¶9}** "Magistrates are judges within the meaning of the Judicial Code of Conduct." *Lingenfelter*, 2015-Ohio-4002, at ¶ 9. Although this Court generally cannot review allegations of judicial misconduct, we "can review properly raised challenges to a magistrate's impartiality." *Id.* at ¶ 10. The Civil Rules allow a party to file a motion to disqualify a magistrate "for bias or other cause." Civ.R. 53(D)(6). The trial court then may exercise its discretion to determine whether disqualification is warranted. *Id. Accord State ex rel. Williams v. Sieve*, 130 Ohio St.3d 207, 2011-Ohio-5258, ¶ 1. This Court reviews a trial court's disqualification decision for an abuse of discretion. *See Lingenfelter* at ¶ 10. An abuse of discretion implies that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶10}** As we outlined in the prior appeal in this matter,

"[a]n independent, fair, and impartial judiciary is indispensable to our system of justice. The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society. Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law." Preamble of the Code of Judicial Conduct. With respect to judicial disqualification, the Supreme Court of Ohio has stated that "'[p]reservation of public confidence in the integrity of the judicial system is vitally important,' and '[a]n appearance of bias can be just as damaging to public confidence as actual bias.'" *In re Disqualification of Burge*, 138 Ohio St.3d 1271, 2014-Ohio-1458, ¶ 9, quoting *In re Disqualification of Murphy*, 110 Ohio St.3d 1206, 2005-Ohio-7148, ¶ 6. Thus, the Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Jud.Cond.R. 2.11(A). Magistrates are judges within the meaning of the Judicial Code of Conduct. *See* Application of the Code of Judicial Conduct. The comments to the rule advise that, "[a] judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification." *See* Jud.Cond.R. 2.11, Comment 5.

*Lingenfelter* at ¶ 9. "'The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality.'" *In re Disqualification of Farmer*, 139 Ohio St.3d 1202, 2014-Ohio-2046, ¶ 7, quoting *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, ¶ 8.

{¶11} On the first day of the parties' divorce hearing, Wife testified on cross-examination, and Husband testified on direct examination. The magistrate then called a recess for the day and asked to speak strictly with the attorneys. The transcript reflects that the magistrate asked both attorneys about the status of their negotiations. As the magistrate and the attorneys discussed various aspects of the case, a question arose as to whether Husband would be able to secure a refinancing for the marital residence. Husband's attorney suggested that Husband's parents might help him with the refinancing and, shortly thereafter, the following exchange took place:

THE MAGISTRATE: I mean, I know his mom and dad by the way just so you know that. I know Dave and Alice Lingenfelter. I've known them for 35 years. In fact I know his -- my secretary is the niece of Alice.

[WIFE'S COUNSEL]: [Your current secretary?] Or your former secretary?

THE MAGISTRATE: No. Former secretary.

[WIFE'S COUNSEL]: Okay.

THE MAGISTRATE: My former secretary * * *. [Her] mom is the sister of Alice Lingenfelter. You know, it's Holmes County.

The magistrate and the attorneys then briefly continued to discuss other aspects of the case until the following exchange occurred:

THE MAGISTRATE: * * * Spousal support, I am not impressed with [Wife]. I really am not. I mean, she should have been out beating the bricks getting a job for the last year or so. I think you know that.

[HUSBAND'S COUNSEL]: You're still on the record.

THE MAGISTRATE: I think you know how I feel about that.

[WIFE'S COUNSEL]: Yeah.

[HUSBAND'S COUNSEL]: Do you know you're still on the record?

THE MAGISTRATE: Oh.

[WIFE'S COUNSEL]: Scratch all that. Yeah.

[HUSBAND'S COUNSEL]: I just noticed this was running.

The last statement made by Husband's attorney is the last one in the transcript for the first day's hearing. The transcript then resumes on the second day of the hearing, 72 days later. On the second day of the hearing, there was no discussion regarding the magistrate's familiarity with Husband's family.

{¶12} At the hearing on her motion to disqualify, Wife testified that she left the courtroom on the first day of the divorce hearing after the magistrate asked to speak strictly to the attorneys. She testified that she waited outside for her attorney and that, when her attorney

came out of the courtroom, she told Wife that the magistrate knew Husband's parents. According to Wife, her attorney did not tell her how long the magistrate had known Husband's parents and did not disclose that another member of Husband's family had been the magistrate's secretary. Wife testified that she only learned about those facts when her new counsel secured a transcript of the proceedings for purposes of filing her objections to the magistrate's decision. She testified that, had she known those additional facts earlier in the proceedings, she would have requested a new magistrate. She further testified that she felt the magistrate had demeaned her and made statements that made it appear that he "was more on the other person's side." According to Wife, when she learned more about the nature of the magistrate's relationship with Husband's family, she then felt that it "[made] sense * * * why [the magistrate] would make those comments [towards her]."

{¶13} Husband also testified at the hearing on Wife's motion to disqualify. He verified that he left the courtroom when the magistrate asked to speak strictly to the attorneys at the end of the first day's hearing. Additionally, he testified that, before trial, he was not aware that the magistrate knew his parents. He stated that, had the magistrate and his parents been close with one another, he believed he would have had knowledge of their affiliation.

{¶14} Finally, the magistrate who presided over the parties' divorce hearing testified at the hearing on Wife's motion. The magistrate testified that he did not have an ongoing or close relationship with Husband's parents; he was simply acquainted with them. He also testified that his former secretary, Husband's cousin, had not worked for him in over 17 years. The magistrate denied that his familiarity with Husband's parents had affected his ability to reach a fair decision in the divorce proceedings. He stated that he disclosed the relationship because, at some point,

someone brought up Husband's parents and it occurred to him that "those [were] the folks that [he] met way back when."

{¶15} The magistrate testified that he did not "have any knowledge or memory of the tape recorder [in the courtroom] being on or off or [him] turning it off or anything like that" when he was speaking to the parties' attorneys. In any event, the magistrate testified that he felt it was "[n]ot necessarily" the best practice or even his normal practice to make disclosures of the kind he made here in a setting where both the parties and their attorneys are present. He testified that he assumes attorneys will accurately relay information of that kind to their clients and that, in this case, there was "a really strong inference" that he intended for the attorneys to tell their clients about his acquaintance with Husband's family. He further testified that, in this case, he "assumed that [he had] assured counsel that * * * [his acquaintance with Husband's family] would not affect [his] decision whatsoever." He admitted, however, that the transcript did not show that he ever asked the attorneys whether they believed that his relationship with Husband's family posed a problem to his continuing to hear the case. The magistrate stated that it was "implied" that he made his disclosure for the purpose of giving the attorneys that opportunity.

{¶16} The trial court denied Wife's motion to disqualify because there was no evidence that the magistrate had a close relationship with Husband's family. The court noted that the magistrate had described simply meeting Husband's parents some 35 years' earlier and not having any type of relationship with them. The court found that the magistrate had testified that he only realized he knew Husband's parents when they were mentioned during the trial. Moreover, the court noted that the magistrate only saw his former secretary, Husband's cousin, occasionally at social events. According to the trial court, the magistrate testified that he had: (1) informed counsel of his acquaintance so that they could tell their clients about it, and (2)

"assured counsel (on July 30, 2013) that knowing these individuals would not affect his decision on the case." The court concluded that disqualification was unnecessary because no objective observer "would harbor serious doubts about the magistrate's impartiality."

{¶17} Contrary to the trial court's opinion, the magistrate did not testify that he "assured counsel (on July 30, 2013) that knowing these individuals would not affect his decision on the case." The magistrate testified that he *assumed* he had made that assurance, and the record reflects that, in fact, he did not. Moreover, the magistrate never instructed the attorneys to inform their clients about his relationship with Husband's family. The magistrate testified that he believed the record contained "a really strong inference" that he intended for the attorneys to tell their clients about his acquaintance with Husband's family. Nevertheless, Wife testified that her attorney only gave her limited information about the magistrate's relationship with Husband's family. She stated that her attorney failed to describe the length of that relationship or mention that Husband's cousin had been employed as the magistrate's secretary. Wife testified that she only learned about those additional details after her new attorney secured a copy of the transcript.

{¶18} As previously set forth, "[a] judge should disclose *on the record* information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification." (Emphasis added.) Jud.Cond.R. 2.11, Comment 5. Here, it is questionable whether the magistrate's disclosure occurred "on the record." *Compare State v. Lomax*, 166 Ohio App.3d 55, 2006-Ohio-1373, ¶ 13 (1st Dist.) (describing "on the record" as "made in court and taken down in the transcript") *with State v. Gaddis*, 8th Dist. Cuyahoga No. 77835, 2002-Ohio-1830, ¶ 8 ("In its ordinary and historical usage, the term 'on the record' means recorded proceedings occurring

in open court in the presence of the judge and the parties."). The transcript of the divorce hearing reflects that both the magistrate and the attorneys were unaware that their post-hearing conversation was being recorded. Moreover, at that point, the matter was in recess, and the magistrate had specifically asked to speak privately with the attorneys. At no point, on the record, were the parties informed of the magistrate's relationship with Husband's family. Moreover, there was no conversation on the record regarding the parties' willingness to waive any potential issues with regard to that relationship. Indeed, no one explored the magistrate's relationship with Husband's family. Although the magistrate later testified that he only met Husband's parents and did not have any relationship with them, we would note that he was able to recall both of their first names without difficulty. At no point in the divorce proceedings did anyone mention Husband's parents by name.

{¶19} As we discussed in the previous appeal in this matter,

> it is apparent from even a cursory review of the magistrate's decision that credibility played an important role in the magistrate's factual findings. The decision is notable for the number of negative references to Wife's attempts at securing employment and for the magistrate's propensity for siding with Husband on issues of credibility. While this could point to a reality that Husband's testimony was in fact more credible than Wife's, there was very little in the way of concrete documentary or physical evidence to support one party's testimony over the other. So, the crediting of Husband's testimony could also evidence bias on the part of the magistrate based upon a lengthy and close relationship with Husband's family.

*Lingenfelter*, 2015-Ohio-4002, at ¶ 14. We note that, at the time the magistrate made a number of negative references towards Wife, he had yet to hear Wife's evidence. At that point, only Husband had presented his evidence.

{¶20} Having reviewed the record, we must conclude that the trial court abused its discretion when it denied Wife's motion to disqualify. Importantly, "'[a]n *appearance* of bias can be just as damaging to public confidence as actual bias.'" *In re Disqualification of Burge*,

138 Ohio St.3d 1271, 2014-Ohio-1458, ¶ 9, quoting *In re Disqualification of Murphy*, 110 Ohio St.3d 1206, 2005-Ohio-7148, ¶ 6. Disqualification is warranted if a reasonable person would conclude that the *appearance* of impropriety exists. *See In re Disqualification of Farmer*, 139 Ohio St.3d 1202, 2014-Ohio-2046, at ¶ 7, quoting *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, at ¶ 8. Accordingly, whether the magistrate here possessed any actual bias in favor of Husband or against Wife is not at issue. The record reflects that the magistrate had a private conversation with the attorneys, only disclosed his relationship with Husband's family at that time, never inquired of the attorneys or the parties whether that relationship raised any concern for them, never assured the attorneys that the relationship would not affect his decision-making, and, before hearing all the evidence, made a number of negative references toward Wife. It further reflects that the conversation between the magistrate and the attorneys ended abruptly when one of the attorneys pointed out that the conversation was being recorded. The magistrate never took the opportunity to address his disclosure with both the parties and their attorneys on the record. He never ensured that, given his disclosure, both parties were comfortable going forward with the proceeding.

{¶21} Based on all of the foregoing, a reasonable person could conclude that there was at least an appearance of impropriety on the part of the magistrate. *See In re Disqualification of Farmer* at ¶ 7, quoting *In re Disqualification of Lewis* at ¶ 8. *See also James v. James*, 101 Ohio App.3d 668, 677 (2d Dist.1995) (appearance of partiality warranted disqualification of the referee who presided over the parties' divorce hearing). While we are mindful of the deferential standard of review that applies in this matter, we are likewise mindful that the "'[p]reservation of public confidence in the integrity of the judicial system is vitally important[.]'" *In re Disqualification of Burge*, 138 Ohio St.3d 1271, 2014-Ohio-1458, at ¶ 9, quoting *In re*

*Disqualification of Murphy*, 110 Ohio St.3d 1206, 2005-Ohio-7148, at ¶ 6. Consequently, we must conclude that the trial court abused its discretion when it denied Wife's motion to disqualify. Wife's first assignment of error is sustained.

Assignment of Error Number Two

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN THE TRIAL COURT USED THE DATE OF SEPARATION AS OPPOSED TO THE STIPULATED TERMINATION DATE OF THE MARRIAGE WHEN CALCULATING THE EQUITY IN THE MARITAL HOME.

Assignment of Error Number Three

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DETERMINED LENGTH AND AMOUNT OF SPOUSAL SUPPORT AWARDED TO THE APPELLANT.

Assignment of Error Number Four

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT CALCULATED CHILD SUPPORT, FAILED TO MAKE A CHILD SUPPORT AWARD TO THE APPELLANT AND NAMING THE APPELLANT THE CHILD SUPPORT OBLIGOR.

{¶22} In her remaining assignments of error, Wife challenges various aspects of the trial court's judgment decree of divorce. Based on our resolution of Wife's first assignment of error, her remaining assignments of error are moot, and we decline to address them. *See* App.R. 12(A)(1)(c).

III

{¶23} Wife's first assignment of error is sustained. Her remaining assignments of error are moot. The judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETH WHITMORE
FOR THE COURT


CARR, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

NORMAN R. "BING" MILLER, JR., Attorney at Law, for Appellant.

ROSANNE K. SHRINER, Attorney at Law, for Appellee.